LERCO CORPORATION, Plaintiff,

v.

Ernest K. HALEY and Haley's Drills, Inc., Defendants.

Civ. A. No. C 81–0311 L(A).

United States District Court, W.D. Kentucky, Louisville Division.

Jan. 25, 1983.

Joseph E. Fineman, Louisville, Ky., for plaintiff; Robert A. Vanderhye, Washington, D.C., of counsel.

Charles E. Ricketts, Jr., Edward M. Steutermann, Robert I. Cusick, Jr., Louisville, Ky., for defendants.

## MEMORANDUM OPINION AND ORDER

ALLEN, Chief Judge.

Lerco Corporation brings this action for patent infringement and unfair competition against Ernest K. Haley, a former employee. Jurisdiction is claimed under 28 U.S.C. Sec. 1338(a) and (b). Venue is proper under 28 U.S.C. Sec. 1400(b). There is no diversity, Lerco being a Kentucky corporation and Haley being a Kentucky resident. Lerco also asserts a claim for theft of trade secrets under Kentucky law by pendant jurisdiction. Haley denies the infringe-

ment charge, contending that Lerco is in violation of the sales agreement under which Lerco claims title to the patents. Haley counterclaims for injunctive relief and damages.

This case is currently before this Court on three (3) motions: 1) Haley's motion for partial summary judgment as to a particular group of patents, 2) Lerco's motion to strike Haley's counterclaim for damages, and 3) Lerco's motion to stay the entire proceedings pending the outcome of two (2) related actions which the parties have filed in state court. After long consideration, this Court denies both Haley's motion for partial summary judgment and Lerco's motion to strike Haley's counterclaim. However, this Court reluctantly sustains Lerco's motion to stay the proceedings.

This case involves a complicated and confusing sales agreement which Haley signed with his former employer, Louisville Erecting and Rigging Company, Inc., Lerco's predecessor. On May 22, 1974, Haley and Louisville Erecting contracted for the sale of four (4) patents by Haley to Louisville Erecting. The company was designated as "Lerco" on the sales agreement. This Court will refer to these four patents as the "Group I patents." By happy coincidence, Louisville Erecting's representative at the signing of the contract was its president, Ernest K. Haley. Louisville Erecting and Rigging Company, Inc., a Kentucky entity, subsequently merged with Lerco, a Delaware corporation, to form Lerco Corporation, a Kentucky corporation, the current plaintiff. The merger occurred on or about May 22, 1974. In 1980, after the merger, Haley resigned from Lerco and began his own company, Haley's Drills, Inc., a co-defendant in this case.

The sales agreement provided that Lerco was to pay Haley on the basis of the greater of two alternative payment plans, essentially developed along the lines of a royalty agreement. Also, on May 22, Haley and Lerco executed two other documents, an assignment agreement and an escrow agreement. In the assignment, Haley assigned all interest in the patents to Lerco.

The escrow agreement provided that the Stockyards Bank of Louisville, Kentucky, would hold a mortgage agreement between Lerco and Haley until Lerco's payment was complete. Upon payment, the bank would release the mortgage to Lerco. The bank accepted as escrowee on July 24, 1974.

On May 26, 1974, Haley and Louisville Erecting (Lerco) completed a mortgage agreement. Lerco, as mortgagor, assigned to Haley, the mortgagee, "the whole right, title, and interest in and to the said inventions and in the Letters Patent therefore, ...." as security for the purchase price of the May 22nd sales agreement. Upon payment of the purchase price, Lerco would have the right to extinguish Haley's interest. Again, as on the other three documents, Haley signed in both his individual and corporate capacities—as both mortgagor and mortgagee.

Haley contends that under the mortgage agreement he had the right to use the patents. Furthermore, Haley contends that Lerco defaulted on its payments under the sales agreement and that, as a result, he (Haley) has the right to sell the patents at a "foreclosure sale." Moreover, Haley contends that Lerco does not have standing to pursue an infringement action because of the lack of clear title. This contention is the basis of Haley's motion for partial summary judgment with respect to the Group 1 patents.

The May 22nd agreement also contains clause number 6 which provides:

During such time as Haley shall remain an employee of Lerco, such inventions and devices as are directly attributable to him which shall have been designed and developed at the cost of Lerco and which are subject to patent, shall be patented at the cost of Lerco and shall be purchased by Lerco from Haley for five (5%) per cent of the "Sales Value" of the inventions, as "Sales Value" is defined herein and with payments to be made for the periods commencing with the sales of said inventions, with reports and times for payments and cooperation with re-

spect to foreign patents to be as herein set forth.

Lerco contends that Haley has violated this clause by not transferring to Lerco five (5) patents which he (Haley) has obtained subsequent to the May 22nd agreement. This Court will refer to these patents as the "Group II patents." Lerco asserts that it is the "equitable owner" of the Group II patents, while Haley asserts that Lerco breached the sales agreement by refusing to pay him royalties on these patents and for refusing to prosecute a patent application for a subsequent invention.

Finally, Lerco contends that Haley has taken customer lists and other business secrets from Lerco in order to start his new business and that he has wrongfully interfered with Lerco's business by false advertising.

Lerco filed this action in Federal Court on May 22, 1981. On the same day, Lerco filed a companion case in Jefferson Circuit Court (court of general jurisdiction), Jefferson County, Kentucky, alleging breach of contract, tortious interference of business relationships, and theft of trade secrets. The case is numbered 81–CI–04884 and assigned to Division 10, Jefferson Circuit Court. In the suit, Lerco alleges many of the same facts which are alleged in this action and asks that the Kentucky courts direct Haley to convey the Group II patents to Lerco in accordance with the sales agreement. Haley denies the charges, asserts that Lerco has breached the agreement, and counterclaims for damages which allegedly resulted from Lerco's refusal to pay him his rightful royalties. On May 7, 1982, Haley filed suit in Jefferson Circuit Court (No. 82–CI–06130 assigned to Division 11) against both Lerco and the Stock Yards Bank, demanding an accounting, the balance due under the contract agreement, a lien on the patents, and a judicial sale to satisfy the lien. In both cases, the pleadings are replete with answers, counterclaims, replies, etc.

At the outset, this Court has some doubts as to whether this Court has jurisdiction. Although neither party has raised the issue, this Court can always raise the issue on its own. Federal Rules of Civil Procedure 12(h)(3). This action sounds primarily in contract. Although Lerco asserts a cause of action under 28 U.S.C. Sec. 1338, and claims that Haley is developing machines to which Lerco owns or should own the patent rights, this Court notes that the primary focus of this case is upon the sales agreement of May 22nd, 1974 and the mortgage agreement of May 24, 1974. If the case is, indeed, an action upon a contract, this Court has the ability to look beyond the pleadings and dismiss the case. *Ausherman v. Stump*, 643 F.2d 715, 716–18 (10th Cir.1981).

The *Ausherman* court noted that while the plaintiff "had liberally sprinkled the word 'infringement' throughout his pleading, the complaint did *not* set forth a 'civil action arising under any Act of Congress relating to patents,' as required by section 1338(a)." 643 F.2d at 718 (emphasis in original). Instead, the plaintiff's complaint alleged breach of contract, recision and reformation of a license agreement, restraint of trade, and other related matters in addition to alleging infringement. The *Ausherman* court held that while the claim stated a complaint in infringement, the actual nature of the claim was in contract and fraud and dismissed the case, there being no diversity. This case bears a remarkable resemblance to the *Ausherman* case, i.e., a contract dispute and no diversity. Since this Court has decided to stay the proceedings in this case pending the outcome of the state court litigation, and since dismissal is an extreme step, this Court will not dismiss the action at this time. However, this Court expects the parties to address the issue before any future proceedings in this forum.

This Court now turns to the motions submitted for consideration. Haley has moved this Court for partial summary judgment on the Group I patents. Haley contends that Lerco has defaulted on the payment of royalties under the sales agreement. Therefore, argues Haley, Lerco has

no title under which to claim infringement. In the alternative, Haley argues that Lerco is a non-exclusive licensee under the sales agreement and that Lerco does not have standing to assert a patent infringement action.

This Court overrules Haley's motion for partial summary judgment because there are material facts at issue. Rule 56(c). If for no other reason, there is no agreement as to what payments were completed or the apportionment of these payments. These questions are questions of fact which should be determined before any motion for summary judgment is granted. Rule 56(c).

Haley also contests Lerco's standing to bring this action, contending that Lerco is a non-exclusive licensee and as such does not have the proper standing to prosecute this action. *Life Time Doors, Inc. v. Walled Lake Door Company*, 505 F.2d 1165, 1167 (6th Cir.1974). See, e.g., *Waterman v. MacKenzie*, 138 U.S. 252 (1891). Haley correctly states the *Life Time* rule. Lerco's status as an assignee or a licensee does have an effect on its standing to bring an action for infringement. See, e.g. Chisum, *The Allocation of Jurisdiction Between State and Federal Courts in Patent Litigation*, 46 Washington Law Review 633, 644–48 (1971). However, again, since this Court is staying this action pending resolution of the state court issues, this Court need not reach this issue at this time—especially since neither party has had an adequate opportunity to brief the issue for the Court. Indeed, the state court proceeding may resolve this issue.

Next, Lerco contends that this Court must dismiss Haley's counterclaim because the counterclaim relates to contract interpretation and this Court, according to Lerco, does not have jurisdiction to hear such a counterclaim. Lerco relies upon the Sixth Circuit's recent decision in *Combs v. Plough, Inc.*, 681 F.2d 469 (6th Cir.1982). This Court disagrees. In *Combs*, the plaintiff (Combs) sued for patent infringement, contending that although Plough had title to the patent, Plough had acquired that title fraudulently. The Sixth Circuit held that Combs was unable to bring his action in Federal Court because he did not have title at the outset. Combs needed the exercise of the Court's "equity jurisdiction" before he (Combs) could assert valid title to the patent and thus maintain an action for patent infringement. 681 F.2d at 470–71.

■ In this case, Lerco comes before this Court asserting color of title. Thus, according to Lerco, this Court has initial jurisdiction to hear this case. This Court has jurisdiction to hear related state claims by pendant jurisdiction if those claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ This Court also has jurisdiction to hear compulsory counterclaims under ancillary jurisdiction even if there is no diversity. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Company*, 426 F.2d 709, 714 (5th Cir.1970). See, generally, *Wright, Law of Federal Courts*, 3rd Ed. at Sec. 9 (1976). A compulsory counterclaim "arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim and does not require for its adjudication the presence of their parties of whom the court cannot acquire jurisdiction." Rule 13(a).

As the Sixth Circuit noted in *Combs* and in *Dill Manufacturing v. Goff*, 125 F.2d 676 (6th Cir.), cert. denied, 317 U.S. 672, 63 S.Ct. 77, 87 L.Ed. 540 (1942), there is a two-part test for determining patent jurisdiction:

(1), the plaintiff initially must have the right to sue for infringement even though his title is challenged and in the suit may be defeated; (2), he must plant his suit upon such right as a patent infringement suit requiring no aid of an equity court as a primary condition for the recovery of damages or the granting of an injunction.

*Combs v. Plough, supra,* at 471, *Dill Manufacturing v. Goff, supra,* at 678. See, generally, *Chisum, supra.*

■ Unlike *Combs,* Lerco contends that it has satisfied both prongs of the *Dill* test. Lerco asserts that it has the right to sue for infringement (although its title is indeed challenged and may be defeated) and Lerco does not assert the need of an equity court as a primary condition to the recovery of damages. This Court emphasized the *Dill* court's statement that the plaintiff's title can be challenged "and in the suit may be defeated." *Supra.* Lerco, having brought this suit and placed its title before this Court, cannot now contend that this Court is without jurisdiction to adjudicate all relevant matters arising out of the operative facts of this case. The fact that a matter relating to a contract or a license arises in the course of a case brought under the patent laws does not defeat federal jurisdiction. *Healy v. Sea Gull Specialty Company,* 237 U.S. 479, 480, 35 S.Ct. 658, 659, 59 L.Ed. 1056 (1915); *Excelsior Wooden Pipe Company v. Pacific Bridge Company,* 185 U.S. 282, 287–88, 22 S.Ct. 681, 683, 46 L.Ed. 910 (1902); *James C. Wilburn & Sons, Inc. v. Brandex Tilt Sash, Inc.,* 380 F.2d 44, 47–48 (7th Cir.1967); *McKnight v. Akins,* 192 F.2d 674, 675–76 (6th Cir.1951); *Artvale, Inc. v. Rugby Fabrics Corp.,* 232 F.Supp. 814, 821 (S.D.N.Y. 1964), aff'd 363 F.2d 1002, 1006–07 (2nd Cir.1966). 30 A.L.R.3d 1421, 1429. Cf. *Aro Corp. v. Allied Witan Company,* 531 F.2d 1368, 1371–72 (6th Cir.1976).

Haley's counterclaim is a compulsory counterclaim which "shall" be stated in the pleadings. The counterclaim is inherent in the determination of title which is Lerco's justification for standing and arises from the same conduct, transaction or occurrence of the claim. Rule 13(a). See, also, Rule 12(b); 35 U.S.C. 261. Haley properly included this counterclaim in his answer. While this Court has some doubt whether there is jurisdiction over Lerco's complaint, this Court has no doubt that if the Court has jurisdiction over the complaint, the Court has jurisdiction over the counterclaim. Lerco's motion to strike Haley's counterclaim is overruled.

■ Finally, this Court turns to Lerco's motion to stay the proceedings pending the outcome of the litigation in state court. Lerco contends that there are several aspects of this litigation which should be decided in state court before this Court considers the question of infringement. Haley asserts that prejudicial delay will result. Reluctantly, this Court grants the requested stay.

As noted, this Court has clear jurisdiction to hear the complete case concerning the Group I patents (if jurisdiction exists). Moreover, this Court is convinced that it has satisfactory pendant jurisdiction to hear the related aspects of the Group II patents under pendant jurisdiction. These issues appear to be "such that (the parties) would ordinarily be expected to try them all in one judicial proceeding ..." *United Mine Workers v. Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138. However, this Court notes that the Group II patents do fall under the *Combs* rule, i.e., Lerco needs equity jurisdiction before clear title can be asserted. There are also questions of state law involving theft of trade secrets, contract interpretation, corporate fiduciary duty and self-dealing, and secured transactions.

This Court also notes that *both* parties have chosen to file suit in state court and this Court has no grounds to enjoin those actions. 28 U.S.C. Sec. 2283. *Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 294–95, 90 S.Ct. 1739, 1746–47, 26 L.Ed.2d 234 (1970). See, generally, Chism, *supra,* at 667. This Court will stay this action since there is nothing in this action which must be decided before the state court can reach a decision on the merits of the actions before it. *Thiokol Chemical Corporation v. Burlington Industries, Inc.,* 448 F.2d 1328, 1331–32 (3rd Cir.1971); *Product Engineering and Manufacturing, Inc. v. Barnes,* 424 F.2d 42, 43 (10th Cir.1970). Cf. *Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). The stay will allow the parties to concen-

trate their activities in one forum of their own choosing. The state action may resolve enough issues to moot this litigation. However, this Court notes that if there is an infringement issue, this Court has exclusive jurisdiction. 28 U.S.C. Sec. 1338(a). This Court will reconsider this stay if either party unduly delays the state court proceedings.

Finally, the parties may always agree to pursue the entire action in this Court. Therefore,

IT IS ORDERED that the defendant's motion for partial summary judgment be and the same hereby is overruled.

IT IS FURTHER ORDERED that the plaintiff's motion to strike the defendant's counterclaim be and the same hereby is overruled.

IT IS FURTHER ORDERED that the plaintiff's motion to stay these proceedings pending the completion of the outcome of pending proceedings in Jefferson Circuit Court (or the agreement of the parties) be, and the same hereby is sustained.

This is not a final and appealable order.